James E. Cecchi
**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey  07068
Tel:  (973) 994-1700

Christopher A. Seeger
**SEEGER WEISS LLP**
55 Challenger Road, 6th Fl.
Ridgefield Park, New Jersey 07660
Tel: (973) 639-9100

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JUDY MILLS, JUDITH DEAN, CARLA COMPAGNONE, AND KENNETH L. BUCK, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>APPLE INC.,<br><br>        Defendant. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT AND**<br>**DEMAND FOR JURY TRIAL** |

Plaintiff Judy Mills, Judith Dean, Carla Compagnone, and Kenneth L. Buck, on  behalf of themselves and all others similarly situated, on personal knowledge as to the facts concerning themselves, and on information and belief as to all other matters, and based  on the investigation of counsel and public statements, bring this class action against  Apple Inc. ("Apple" or "Defendant") pursuant to applicable state laws and allege as follows:

## I.      INTRODUCTION

1.      This case concerns Defendant's campaign to foist – through deceptive and fraudulent marketing – defective Apple iPhones ("iPhone") that degrade within just one-year of use on Plaintiffs and other consumers throughout the United States and its scheme to mask the defect by deliberately causing older Apple iPhone models to operate more slowly when new models are released.

2.      Apple has admitted that the batteries of iPhones begin degrading within the first year of use.   In order to mask the defect, Apple's software updates were engineered to purposefully slow down or "throttle down" the performance speeds of iPhones as they get older. Plaintiffs and Class Members never consented to allow Defendant to slow their iPhones; nor was consent ever requested by Apple.

3.      While Apple has yet to come forth with a full and candid description of all facts known only to it concerning its deliberate "throttling down" of older model iPhone speeds, what Apple has admitted is damning.   Apple admitted to slowing down the processing speed of "older" model iPhones — SE, 6, 6S, and 7 — to preserve their batteries and prevent unexpected shutdowns.   Without disclosure or customer consent, Defendant promoted an upgrade to the iPhone's performance level with knowledge that the upgrade was actually a downgrade and such baseless promotion is misleading to Plaintiffs and other iPhone users in a material respect.

4.      Indeed, rather than curing the battery defect by putting larger more suitable batteries in the iPhones in the first place or providing free battery replacements for all affected iPhones, Apple sought to mask the battery defect.   This $700 to $1,000-plus product, as designed, is unable to function near its peak after just a single year of use.

5.      Apple produced, promoted, sold, and distributed the iPhone throughout the United States.  Consumers across the United States paid millions of dollars for defective iPhones touted as premium products using breakthrough technology that featured unmatched performance.  As Apple admits, the iPhones were inherently and materially defective.  In short, from the moment Plaintiffs and Class Members purchased their iPhones containing defective batteries, they were an inferior, defective product that, by design and composition, did not have the qualities or properties Apple continuously represented in its sales and marketing materials.  The defective iPhones were neither designed nor engineered to be used for the ordinary, expected purpose as high performing and durable.

6.      Worse still, despite its knowledge of the defective batteries, Defendant has been unable or unwilling to repair the defect at its own cost or offer Plaintiffs and Class Members a non-defective iPhone or reimbursement for the cost of such defective iPhones and the consequential damages arising the purchase and use of the iPhones.  Because of Apple's fraudulent concealment of the defect, Plaintiffs and Class Members were left with the unappealing choice of either tolerating the throttled-down performance or purchasing a new iPhone from Defendant at costs in excess of $1,000, which may also function at peak levels for a single year.

7.      As a result of Defendant's wrongful conduct, it has interfered with Plaintiffs' and Class Members' use or possession of their iPhones.  Apple's actions and omissions violate well established legal and statutory duties it owed to Plaintiffs and all other similarly situated United States consumers.

8.    Plaintiffs bring this class action on behalf of themselves and all similarly situated consumers for actual and statutory damages, as well as punitive damages and equitable relief to fully redress the vast harm Apple's wrongful acts have unleashed on United States consumers.

## II.    PARTIES

### A.    Plaintiffs

9.    Plaintiff Judy Mills is a citizen of South Amboy, New Jersey.  Ms. Mills owns an iPhone 6, which was purchased new approximately three years ago from Verizon Wireless.  Ms. Mills' iPhone 6 was covered by a written warranty.  Prior to purchasing her iPhone 6, Ms. Mills viewed and heard commercials that touted Apple's long record of unmatched performance and quality.  Ms. Mills uses her iPhone 6 for numerous applications and services and depends on its performance.  Ms. Mills was unaware of the iPhone's defect described herein prior to her purchase of this iPhone 6.  Over time, Ms. Mills noticed appreciable slowdowns in the operation of her iPhone 6 after certain iOS updates were issued to her device.

10.    Plaintiff Judith Dean is a citizen of Branchville, New Jersey.  Ms. Dean owned an iPhone 6, which was purchased new several years ago.  Ms. Dean's iPhone 6 was covered by a written warranty.  Prior to purchasing her iPhone 6, Ms. Dean viewed and heard commercials that touted Apple's long record of unmatched performance and quality.  Ms. Dean uses her iPhone 6 for numerous applications and services and depends on its performance.  Ms. Dean was unaware of the iPhone's defect described herein prior to her purchase of this iPhone 6.  Over time, Ms. Dean noticed appreciable slowdowns in the operation of the iPhone 6, after certain iOS updates were issued to her device.  Frustrated by the performance speed of her iPhone 6, Ms. Dean visited the Apple Store in Rockaway, New Jersey.  Apple's staff member – a "genius" – advised Ms. Dean that her phone was not defective, failed to disclose that Apple had

intentionally slowed performance which Ms. Dean relied upon, and recommended that she purchase a newer iPhone with the world's fastest processor. Because of the performance degradation, Ms. Dean purchased a new iPhone 7 in or about December 2017 – not knowing that iPhone 7s suffered from the same material defect and slowed performance. If Apple had publically explained that it was purposefully throttling down the performance speed of its iPhone devices, and that performance speed of iPhones could be improved by a replacement battery or a larger more suitable battery, Ms. Dean would not have purchased an iPhone 7 to replace her iPhone 6.

11.     Plaintiff Carla Compagnone is a resident of Everett, Massachusetts. Ms. Compagnone owns an iPhone 6, which was purchased new approximately three years ago. Ms. Compagnone' iPhone 6 was covered by a written warranty. Prior to purchasing her iPhone 6, Ms. Compagnone viewed and heard commercials that touted Apple's long record of unmatched performance and quality. Ms. Compagnone uses her iPhone 6 for numerous applications and services and depends on its performance for both personal use and for her business. Ms. Compagnone was unaware of the iPhone's defect described herein prior to her purchase of this iPhone 6. Over time, Ms. Compagnone noticed screen display problems asnd appreciable slowdowns in the operation of her iPhone 6 after certain iOS updates were issued to her device.

12.     Plaintiff Kenneth L. Buck is a citizen of Galloway, New Jersey. Mr. Buck owns an iPhone 6, which was purchased new in or about September 2014 from Verizon Wireless. Mr. Buck's iPhone 6 was covered by a written warranty. Prior to purchasing his iPhone 6, Mr. Buck viewed and heard commercials that touted Apple's long record of unmatched performance and quality. Mr. Buck used his iPhone 6 for numerous applications and services and depended on its performance. Mr. Buck was unaware of the iPhone's defect described herein prior to his

purchase of this iPhone 6. Over time, Mr. Buck noticed appreciable slowdowns in the operation of his iPhone 6 as well screen display problems after certain iOS updates were issued to his device. Because of the performance degradation, Mr. Buck purchased a new iPhone 8 in or about December 2017. If Apple had publically explained that it was purposefully throttling down the performance speed of its iPhone devices, and that performance speed of iPhones could be improved by a replacement battery or a larger more suitable battery, Mr. Buck would not have purchased an iPhone 8 to replace his iPhone 6.

**B.    Defendant**

13.    Defendant Apple Inc. is a Delaware corporation with its principal place of business located in Cupertino, California. At all relevant times, Defendant designed, manufactured, distributed, marketed, and sold iPhones throughout the United States.

### III.    JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337, as well as jurisdiction over the state law claims pursuant to 28 U.S.C. §§ 1332(d) and 1367 because this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some members of the proposed Classes are citizens of a state different from the Defendant.

15.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 (b), (c), and (d), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

16.    This Court has personal jurisdiction because Defendant does business in this District and a substantial part of the events and injury giving rise to Plaintiffs' claims occurred in this District.

### IV.     FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

17.     Apple designed, manufactured, marketed, sold, and warranted its iPhones in New Jersey, Massachusettes, and throughout the United States.  As a leader in the United States mobile phone and technology industry, Apple knows the critical importance of both performance and battery life.  Apple also knows the multitude of harms that foreseeably flow to individual consumers when their performance is intentionally degraded without their knowledge.

18.     Apple promoted and touted the defective iPhones as achieving unmatched performance with the most powerful processors put in a mobile phone.  Indeed, when Apple introduced the iPhone 7, it boasted that the A10 Fusion is the "most powerful chip ever in a smartphone" that "blows away the competition".

19.     Apple's iPhones were inherently and materially defective.  Due to a defective battery that rapidly degraded within its first year of use, the iPhones were an inferior, defective product that, by design and composition, did not have the qualities or properties Apple continuously represented in its sales and marketing materials.

### A.     Apple's Intentional Performance Degradation

20.     Apple released operating system software updates ("iOS updates") that it expressly specified and recommended that Plaintiffs and Class Members should download and install to "fix bugs and issues" and "increase performance" on their older model iPhones.  Among other things, Apple's help staff – referred to as "Apple Geniuses" and touted by Apple as possessing unique and specialized expertise about Apple products – recommended the download and installation of iOS updates following Plaintiffs' and Class Members' purchases of iPhones.

21.     Apple purposefully and knowingly released iOS updates to older model iPhones that slowed the performance speeds of the central processing units ("CPUs") of these devices.

Apple's software updates purposefully slowed or "throttled down" the performance speeds of iPhone SEs, iPhone 5s, iPhone 6s, iPhone 7s and as yet unknown versions of iPhones because iOS updates degraded performance within these model devices.

22.    Apple's iOS updates purposefully failed to explain or otherwise disclose that the slowdowns of the CPUs in older model devices and resulting lost or diminished operating performance could be remedied by replacing the batteries of these devices, by avoiding the download of iOS updates, or by Apple using a larger more suitable battery to begin with that did not degrade within just one-year.

23.    Instead, as a result of Apple's decision to purposefully slowdown or throttle down these devices, consumers were fraudulently induced to purchase the latest iPhone versions such as the iPhone 8 and iPhone X – which Apple touted as the world's fastest phones.

**B.    Apple Knew the Defective iPhones Were Not What It Represented**

24.    Following significant examination and documentation by third parties, on December 20, 2017, Apple has confirmed that its software does degrade the performance of older iPhones.  This is, according to the statement, undertaken in "a bid to deliver the best experience for its customers".

25.    In its official statement, Defendant stated:

> Our goal is to deliver the best experience for customers, which includes overall performance and prolonging the life of their devices. Lithium-ion batteries become less capable of supplying peak current demands when in cold conditions, have a low battery charge or as they age over time, which can result in the device unexpectedly shutting down to protect its electronic components. Last year we released a feature for iPhone 6, iPhone 6s and iPhone SE to smooth out the instantaneous peaks only when needed to prevent the device from unexpectedly shutting down during these conditions. We've now extended that feature to iPhone 7 with iOS 11.2, and plan to add support for other products in the future.

26.    Defendant's iOS updates never informed Plaintiffs and Class Members that Defendant was purposefully slowing down the operation of their devices.  Apple never requested consent; nor did Plaintiffs consent to Defendant slowing down their iPhones.

27.    While Apple disputes that its action to purposefully degrade performance of older model iPhones and conceal its misconduct was designed to promote the sales of newer model iPhones, Apple's software updates came out alongside its launch of newer iPhone models.  Even accepting Apple's story as true, at the very same time it promoted its new iPhones as the fastest in the world, it secretly slowed down older models.

28.    According to Apple, despite its sales pitch that Apple's products are superior in quality and performance, it knowingly designed and sold products at a substantial premium that begin to fall apart after just one-year.  This is not something buyers are warned about, and consumers are not presented with options to fix it.  Because of Apple's concealment and deceit, consumer's only remedy was to buy a new more expensive phone.

29.    Apple should have designed phones that do not degrade this rapidly and it should have let consumers know what was going on.  There is already a low-power mode built into the iPhone – Apple could have included a toggle to let more demanding iPhone owners turn off processor throttling if they do not want it.  And a simple popup after this feature is introduced or enabled would go a long way toward letting iPhone owners understand what was going on.  Instead, Apple could have just made a slightly thicker iPhone with a bigger more suitable battery in place of the defective battery Apple designed, installed, and sold to millions of consumers.

30.    Plaintiffs and Class Members were never given the option to bargain or choose whether they preferred to have their iPhones slower than normal.

C.      **Harm to Plaintiffs and Class Members**

31.     When Plaintiffs and Class Members bought their iPhones they were expecting that their iPhones would work properly, and that the performance of their iPhones would not slow down for unapparent reasons.

32.     Defendant's intentional slowdown of the performance of older models of iPhones greatly diminished the effectiveness, usefulness and utility of these devices.

33.     As a result of the slowdown of the performance of their older iPhone models, Plaintiffs and Class Members bought newer iPhone models in order to have a properly functioning smartphone and avoid the slowdown of their older iPhone models.  Plaintiffs and Class Members lost value of older iPhone models because of the slowdown of performance.

34.     The slowdown of older iPhone models was material in impact.  If Plaintiffs and Class Members knew that the performance of their iPhones would slow down after the introduction of a new iPhone model or an iOS update, they would not purchase an iPhone.  If Plaintiffs and Class Members knew that the slow performance of their iPhones could be remedied by purchasing a new battery, they would buy a new battery instead of a new iPhone model.  If Plaintiffs and Class Members knew that the slow performance of their iPhone could be avoided by refusing to download the iOS update, they would not buy a new iPhone model.

35.     Defendant knew and intentionally failed to disclose that it was purposefully slowing down the performance of older iPhones models and that the slowdown could be remedied by purchasing a new battery, by avoiding to download the iOS update or otherwise.

36.     Prior to the purchase of their newer iPhone models, Defendant never informed Plaintiffs and Class Members that the performance of their old iPhone models could be improved by purchasing a new battery.

37.    Defendant knew how to remedy or avoid the slowdown of older iPhone models. Defendant purposefully slowed down the speed of older iPhone models through unknown ways. Defendant purposefully concealed and failed to disclose the fact that a battery replacement would improve the performance of older iPhone models.

38.    As a direct and proximate result of Apple's actions and omissions, Plaintiffs and similarly situated consumers have been harmed, injured, and damaged.  Plaintiffs and Class Members are entitled to compensation, including:

      i.    Replacement of old phone;

     ii.    Loss of use;

    iii.    Loss of value;

    iv.    Purchase of new batteries;

     v.    Ascertainable losses in the form of deprivation of the value of their iPhone; and

    vi.    Overpayments to Defendant for iPhones with defective batteries that rapidly deteriorated and did not performing as promised by Apple.

## V.    CLASS ACTION ALLEGATIONS

39.    Plaintiffs bring all claims as class claims under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

40.    Plaintiffs bring their claims on their own behalf, and on behalf of a proposed nationwide class ("National Class"), defined as follows:

All United States residents who purchased iPhone models older than iPhone 8 and iPhone X.

41.    In addition to the Nationwide Class, and pursuant to Federal Rule of Civil Procedure Rule 23(c)(5), Plaintiffs seek to represent the following State Classes or subclasses, as well as any subclasses or issue classes as Plaintiffs may propose and/or the Court may designate at the time of class certification:

      i.   New Jersey State Class:  All residents of the State of New Jersey who purchased iPhone models older than iPhone 8 and iPhone X.

      ii.   Massachusetts State Class:  All residents of the Commonwealth of Massachusetts who purchased iPhone models older than iPhone 8 and iPhone X.

42.    Plaintiffs reserve the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

43.    The National Classes and the State Classes are referred to, collectively, as the Classes.

44.    Excluded from the Classes are:  the Defendant; any of its corporate affiliates; any of its directors, officers, or employees; any persons who timely elects to be excluded from any of the Classes; any government entities; and any judge to whom this case is assigned and his or her immediate family, law clerks, and court staff.

45.    The Classes are so numerous that joinder of individual members thereof is impracticable.  Plaintiffs believe that there are millions of members throughout the United States. The precise number and identities of Class Members are unknown to Plaintiffs, but are known to Defendant or can be ascertained through discovery, using records of sales, warranty records, and other information kept by Defendant or its agents.

46.    Common questions of law and fact exist as to all members of the Classes and, as appropriate, the members of each Subclass.  The questions of law and fact common to the Classes include:

i.    Whether Defendant's iPhones are defective and the nature of that defect;

ii.    Whether and when Defendant had knowledge of the defect in its iPhones;

iii.    Whether Defendant concealed defects in its iPhones;

iv.    Whether Defendant had a duty to disclose material facts to Plaintiffs and the Classes regarding defects in its iPhones;

v.    Whether Defendant's omissions regarding the iPhones were likely to deceive Plaintiffs and the Classes;

vi.    Whether Defendant's alleged conduct constitutes the use or employment of an unconscionable commercial practice, deception, fraud, false pretense, false promise and misrepresentation within the meaning of the applicable state consumer fraud statutes;

vii.    Whether Defendant has been unjustly enriched under applicable state laws;

viii.    Whether Defendant has violated its express warranties to Plaintiffs and the Classes;

ix.    Whether Defendant has violated the implied warranty of merchantability under applicable state law;

x.    Whether Defendant actively concealed the defect in order to maximize profits to the detriment of Plaintiffs and the Classes;

xi. Whether Plaintiffs and the Class Members are entitled to damages, restitution, disgorgement, equitable relief, or other relief; and

xii. The amount and nature of such relief to be awarded to Plaintiffs and the Classes, including the appropriate class-wide measure of damages for the Classes.

47.    The determination of the truth or falsity of these and other questions will resolve an issue that is central to the validity of each one of the claims (depending on the cause of action asserted) in one stroke. These and other questions will need to be answered in connection with every Class Member's claim (depending on the cause of action asserted). These questions will generate common answers apt to drive the resolution of the litigation.

48.    Plaintiffs' claims are typical of the claims of the absent members of the Classes (and their respective Subclasses) because they arise from the same course of conduct by Defendant and are based on the same legal theories as do the claims of all other members of each of their respective Class or Subclass. Moreover, Plaintiffs seek the same forms of relief for themselves as they do on behalf of absent Class Members.

49.    Plaintiffs will fairly and adequately protect the interests of the absent members of the Classes. Because their claims are typical of the respective Class or Subclass that they seek to represent, Plaintiffs have every incentive to pursue those claims vigorously. Plaintiffs' interests are coincident with, and not antagonistic to, those of the absent members of the Classes. Moreover, Plaintiffs are represented by counsel competent and experienced in the prosecution of class action and, in particular, consumer protection litigation.

50.    Certification of the Classes under Rule 23(b)(3) of the Federal Rules of Civil Procedure is appropriate because the questions of law and fact common to the members of the

Classes set forth in the paragraph above predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

51.    In addition, class action treatment under Rule 23(b)(3) is a superior method for the fair and efficient adjudication of this controversy.  Among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense of numerous individual actions.  Furthermore, although the damages suffered by members of each of the proposed Classes are substantial in the aggregate, the damages to any individual member of the proposed Classes would be insufficient to justify individually controlling the prosecution of separate actions against Defendant.  The benefits of proceeding on a class-wide basis, including providing injured persons or entities with a method for obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any potential difficulties in managing this class action.

## VI.    CAUSES OF ACTION

**A.    Claims Brought on Behalf of the Nationwide Class.**

### COUNT I

### FRAUD AND FRAUDULENT CONCEALMENT

52.    Plaintiffs reallege and incorporate the preceding paragraphs as if fully set forth herein.

53.    Plaintiffs bring this cause of action for themselves and on behalf of the Nationwide Classes under the common law of fraud, which is materially uniform in all states.  In the alternative, Plaintiffs bring this claim on behalf of the State Classes.

54.     As described above, Defendant defrauded Plaintiffs and Class Members by knowingly and intentionally misrepresenting to them and to the public at large that its defective iPhones had superior design and quality, with unmatched performance; that its iOS updates were designed to increase performance of their iPhones; and that each and every consumer should "update" their iPhone to improve performance.

55.     As described above, Defendant carried out its fraudulent and deceptive conduct through affirmative misrepresentations, omissions, suppressions, and concealments of material fact to Plaintiffs and the Class Members, as well as to the public at large.

56.     These representations were false, as detailed above.  Defendant knew that the representations were false and acted with knowledge of their falsity intentionally to induce Plaintiffs and Class Members to buy iPhones at a premium, as well as avoid Defendant's warranty obligations, and achieve windfall profits at the expense of Plaintiffs and all Class Members.

57.     Plaintiffs and Class Members had no reasonable means of knowing that Defendant's representations were false and misleading.

58.     Defendant's actions constitute actual fraud and deceit because Defendant did the following with the intent to deceive Plaintiffs and Class Members and to induce them to enter into purchasing defective iPhones:

      a.  Suggesting that the defective iPhones were far superior to anything on the market with unmatched performance and quality, even though it knew this to be not true; and

b.   Positively asserting that the defective iPhones were far superior to anything on the market with unmatched performance and quality, in a manner not warranted by the information available to Defendant.

59.    Defendant's misrepresentations were material in that they would affect a reasonable consumer's decision to purchase Defendant's iPhones.  Plaintiffs and Class Members paid a premium for iPhones precisely because they purportedly offered superior quality and performance than anything on the market.  Whether Defendant's iPhones were defective and performance degraded within one-year would have been an important factor in Plaintiffs' and the Class Members' decisions to purchase or obtain iPhones.

60.    Defendant also promoted iOS updates to the iPhone's performance level with knowledge that the upgrade was actually a downgrade.

61.    Defendant's intentionally deceptive conduct induced Plaintiffs and Class Members to purchase defective iPhones and resulted in harm and damage to them.

62.    Plaintiffs believed and relied to their detriment upon Defendant's affirmative misrepresentations.  Class Members are presumed to have believed and relied upon Defendant's misrepresentations because those facts are material to a reasonable consumer's decision to purchase iPhones.

63.    Defendant also fraudulently concealed and suppressed material facts regarding the iPhones.  Despite knowing about the iPhone's rapid performance degradation, Defendant continued to promote and tout its products as the fastest devices in the world.  It knew when it marketed and sold the iPhones that the batteries were inferior in composition and design and did not have the superior performance Defendant represented.  Defendant failed to disclose these facts to consumers at the time they marketed and sold its iPhones.  Defendant knowingly and

intentionally engaged in this concealment in order to boost sales and revenues, maintain its competitive edge in the industry, and obtain windfall profits.

64.    Defendant also knew or should have known that its iOS updates and accompanying "update" descriptions would be relied up on by Plaintiffs and Class Members.

65.    Plaintiffs and Class Members had no reasonable means of knowing that Defendant's representations were false and misleading, or that Defendant had omitted to disclose material details relating to iPhones.  Plaintiffs and Class Members did not and could not reasonably discover Defendant's concealment on their own.

66.    Defendant had a duty to disclose, rather than conceal and suppress, the full scope and extent of the defects in its iPhones because:

    a.  Defendant had exclusive or far superior knowledge of the defect in the iPhones and concealment thereof;

    b.  The details regarding the defect in the iPhones and concealment thereof were known and/or accessible only to Defendant;

    c.  Defendant knew Plaintiffs and Class Members did not know about the defect in the iPhones and concealment thereof and that the untrained observer would not be able to detect the inherent defects in the iPhones; and

    d.  Defendant made representations and assurances about the qualities of the iPhones, including statements about its superior performance and abilities that were misleading, deceptive, and incomplete without the disclosure of the fact that the iPhones were not designed or manufactured to perform as promised.

67.    These omitted and concealed facts were material because a reasonable consumer would rely on them in deciding to purchase their iPhones, and because they substantially reduced

the value of the iPhones that Plaintiffs and Class Members purchased.  Whether Defendant's iPhones were defective would have been an important factor in Plaintiffs' and the Class Members' decisions to purchase or obtain the iPhones.

68.     Plaintiffs and the Class Members trusted Defendant not to sell them products that were defective or to mispresent the true purpose and intent of iOS updates.

69.     Defendant intentionally and actively concealed and suppressed these material facts to falsely assure consumers that the iPhones were free from defects, as represented by Defendant and as reasonably expected by consumers.

70.     Plaintiffs and the Class Members were unaware of these omitted material facts and would have paid less for the iPhones, or would not have purchased them at all, if they had known of the concealed and suppressed facts.  Plaintiffs and the Class Members did not receive the benefit of their bargain due to Defendant's fraudulent concealment.

71.     Plaintiffs and Class Members relied to their detriment upon Defendant's reputations, fraudulent misrepresentations, and material omissions in deciding to purchase the iPhones.

72.     Defendant's fraudulent concealment was also uniform across all Class Members; Defendant concealed from everyone the true nature of the defect in the iPhones.

73.     As a direct and proximate result of Defendant's deceit and fraudulent concealment, including its intentional suppression of the true facts, Plaintiffs and the Classes suffered injury.  They purchased defective iPhones that had a diminished value by reason of Defendant's concealment of, and failure to disclose, the defects.

74.     Plaintiffs and the Classes sustained damages as a direct and proximate result of Defendant's deceit and fraudulent concealment in an amount to be proven at trial.

75.     Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class Members' rights, with the aim of enriching Defendant, justifying an award of punitive damages in an amount sufficient to deter such wrongful conduct in the future.

## COUNT II

## UNJUST ENRICHMENT/QUASI-CONTRACT

76.     Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

77.     Plaintiffs bring this cause of action for themselves and on behalf of the Nationwide Class.  In the alternative, Plaintiffs bring this claim on behalf of the State Classes.

78.     Plaintiffs bring this claim as an alternative to the contractual warranty claims asserted below or due to Defendant's intentional and deceptive efforts to conceal the defects in the iPhones and avoid its warranty obligations.

79.     Defendant received hundreds of millions in revenue from the sale of over thousands of iPhones.

80.     These millions in revenue was a benefit conferred upon Defendant by Plaintiffs and the Classes.

81.     Defendant was unjustly enriched through financial benefits conferred upon it by Plaintiffs and the Classes, in the form of the amounts paid to Defendant for the iPhones.

82.     Plaintiffs and the Classes elected to purchase the iPhones based upon Defendant's misrepresentations, deception, and omissions.  Defendant knew and understood that it would and did receive a financial benefit, and voluntarily accepted the same, from Plaintiffs and the Classes when they elected to purchase their iPhones.

83.     By selecting Defendant's iPhones and purchasing them at a premium price, Plaintiffs and the Classes reasonably expected that the iPhones would have the unmatched performance promised by Defendant.

84.     Therefore, because Defendant will be unjustly enriched if it is allowed to retain the revenues obtained through falsehoods, deception, and misrepresentations, Plaintiffs and each Class Member are entitled to recover the amount by which Defendant was unjustly enriched at his or her expense.

85.     Accordingly, Plaintiffs, on behalf of themselves and each Class Member, seek damages against Defendant in the amounts by which Defendant has been unjustly enriched at Plaintiffs' and each Class Member's expense, and such other relief as this Court deems just and proper.

**B.      Claims Brought on Behalf of the New Jersey Class.**

**COUNT III**

**VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT**
**(N.J. STAT. ANN. § 56:8-1, *ET SEQ.*)**

86.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

87.     Plaintiffs bring this claim on behalf of themselves and the New Jersey Class against Defendant.

88.     Defendant and the New Jersey Subclass Members are "persons" within the meaning of N.J. STAT. ANN. § 56:8-1(d).  The Defendant engaged in "sales" of "merchandise" within the meaning of N.J. STAT. ANN. § 56:8-1(c), (d).

89.     The New Jersey Consumer Fraud Act ("New Jersey CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception,

fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby[.]"  N.J. STAT. ANN. § 56:8-2.

90.    In the course of their business, Defendant violated the New Jersey CFA by knowingly misrepresenting and intentionally concealing material facts regarding the performance of its iPhones, as detailed above.  Specifically, in marketing, offering for sale, and selling the defective iPhones, Defendant engaged in one or more of the following unfair or deceptive acts or practices which are proscribed by the New Jersey CFA:

    i.   Representing that the iPhones have approval, characteristics, uses, benefits, or qualities that they do not have;

    ii.   Representing that the iPhones are of a particular standard, quality and grade when they are not;

    iii.   Failing to employ technology and systems to promptly detect rapid performance deterioration;

    iv.   Unreasonably delaying giving notice to consumers after it purposefully and intentionally slowed or "throttled down" iPhones;

    v.   Knowingly and fraudulently failing to provide accurate, timely information to consumers about the extent of the defect and performance degradation; and/or

    vi.   Advertising the iPhones with the intent not to sell them as advertised.

91.     Defendant's scheme and concealment of the true characteristics of the iPhones were material to the New Jersey Class, and Defendant misrepresented, concealed, or failed to disclose the truth with the intention that the New Jersey Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the New Jersey Class would not have purchased their iPhones, or would have paid significantly less for them.

92.     The New Jersey Class Members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose.

93.     Defendant had an ongoing duty to the New Jersey Class to refrain from unfair and deceptive practices under the New Jersey CFA in the course of its business.  Specifically, Defendant owed the New Jersey Class Members a duty to disclose all the material facts concerning the iPhones because it possessed exclusive knowledge, it intentionally concealed it from the New Jersey Class, or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

94.     The New Jersey Class Members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's concealment, misrepresentations, and/or failure to disclose material information.

95.     Pursuant to N.J. STAT. ANN. § 56:8-19, on behalf of the New Jersey State Class, Plaintiffs seek an order awarding damages, treble damages, and any other just and proper relief available under the New Jersey CFA.

## COUNT IV

### BREACH OF IMPLIED WARRANTIES
### (N.J. STAT. ANN. §§ 12A:2-314, 12A:2-315)

96.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

97.    Plaintiffs bring this claim on behalf of themselves and the New Jersey Classes against Defendant.

98.    Defendant is and was at all relevant times a "merchant" with respect to the iPhones under N.J. STAT. ANN. § 12A:2-104(1), and a "seller" of the iPhones under N.J. STAT. ANN. § 12A:2-103(1)(d).

99.    The iPhones are and were at all relevant times "goods" within the meaning of N.J. STAT. ANN. § 12A:2-105(1).

100.    A warranty that the iPhones were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to N.J. STAT. ANN. § 12A:2-314.

101.    In addition, a warranty that the iPhones were fit for their particular purpose is implied by law pursuant to N.J. STAT. ANN. § 12A:2-315.  Defendant knew at the time of sale of the iPhones that the New Jersey Class intended to use the iPhones requiring a particular standard of performance and security, and that the New Jersey Class were relying on Defendant's skill and judgment to furnish suitable products for this particular purpose.

102.    The iPhones, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendant cannot cure the defect in the iPhones, they fail to cure Defendant's breach of implied warranties.

103.    As a direct and proximate result of Defendant's breach of its implied warranties, the New Jersey Class Members have been damaged in an amount to be determined at trial.

104.    Defendant was provided notice of the issues raised in this Count and this Complaint as detailed above.

**C.    Claims Brought on Behalf of the Massachusetts Class.**

**COUNT V**

**VIOLATIONS OF THE MASSACHUSETTS CONSUMER PROTECTION ACT
(MASS. GEN. LAWS CH. 93A, § 1, *ET SEQ.*)**

105.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

106.    This count is brought on behalf of the Massachusetts State Class against Defendants.

107.    Defendants and the Massachusetts State Class Members are "persons" within the meaning of M.G.L.A. CH. 93A, § 1(a).

108.    The Defendants engaged in "trade" or "commerce" within the meaning of M.G.L.A. CH. 93A, § 1(b).

109.    The Massachusetts Consumer Protection Act (The Massachusetts Act") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."  M.G.L.A. CH. 93A, § 2.

110.    In the course of their business, Defendants violated the Massachusets Act by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, and performance of its iPhones, as detailed above.  Specifically, in marketing, offering for sale, and selling the defective iPhones, Defendants engaged in one or more of the following unfair or deceptive acts or practices:

a.    Representing that the iPhones have approval, characteristics, uses, benefits, or qualities that they do not have;

b.    Representing that the iPhones are of a particular standard, quality and grade when they are not; and/or

c.    Advertising the iPhones with the intent not to sell them as advertised.

111.    Defendants' scheme and concealment of the true characteristics of the iPhones were material to the Massachusetts State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the Massachusetts State Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Massachusetts State Class would not have purchased the iPhones, or would have paid significantly less for them.

112.    The Massachusetts State Class Members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

113.    Defendants had an ongoing duty to the Massachusetts State Class to refrain from unfair and deceptive practices under the Massachusetts Law in the course of their business. Specifically, Defendants owed the Massachusetts State Class Members a duty to disclose all the material facts concerning the iPhones because they possessed exclusive knowledge, they intentionally concealed the defects from the Massachusetts State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

114.    The Massachusetts State Class Members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

115.    Pursuant to M.G.L.A. CH. 93A, § 9, Plaintiffs seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $25 for each Plaintiff.  Because Defendants' conduct was committed willfully and knowingly, Plaintiffs are entitled to recover, for each Plaintiff, up to three times actual damages, but no less than two times actual damages.

116.    Defendants were provided notice of the issues raised in this Count and this Complaint, as detailed above.  In addition, on January 17, 2018 a notice letter was sent on behalf of the Massachusetts State Class to Defendants pursuant to M.G.L.A. CH. 93A, § 9(3).  Because Defendants failed to remedy their unlawful conduct within the requisite time period, the Massachusetts State Class seeks all damages and relief to which they are entitled.

## COUNT VI

## BREACH OF IMPLIED WARRANTIES
## (M.G.L.A. 106, §§ 2-314, 2-315)

117.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

118.    This count is brought on behalf of the Massachusetts State Class against Defendants.

119.    Defendants are and were at all relevant times "sellers" with respect to the iPhones under M.G.L.A. CH. 106 § 2-103(1)(d), and "merchants" under M.G.L.A. CH. 106 § 2-104(1).

120.    The iPhones are and were at all relevant times "goods" within the meaning of M.G.L.A. CH. 106 § 2-105(1).

121.    A warranty that iPhones were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to M.G.L.A. CH. 106 § 2-314.

122.    In addition, a warranty that the iPhones were fit for their particular purpose is implied by law pursuant to M.G.L.A. Cʜ. 106 § 2-315.  Defendants knew at the time of sale and installation of the batteries in the iPhones that the Massachusetts State Class required a particular standard of performance and durability, and that the Massachusetts State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

123.    The iPhones, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the iPhones, they fail to cure Defendants' breach of implied warranties.

124.    As a direct and proximate result of Defendants' breach of their implied warranties, the Massachusetts State Class Members have been damaged in an amount to be determined at trial.

125.    Defendants were provided notice of the issues raised in this Count and this Complaint as detailed above.

WHEREFORE, Plaintiffs, individually and on behalf of the members of the Nationwide and State Classes, respectfully request that the Court certify the proposed Nationwide and State Classes, including designating the named Plaintiffs as representatives of the Nationwide Class and their respective State Classes and appointing the undersigned as Class Counsel under the applicable provisions of Fed. R. Civ. P. 23, and that the Court enter judgment in their favor and against Defendant including the following relief:

A.    An award of restitution, compensatory damages, and costs for economic loss and out-of-pocket costs;

B.      An award of punitive and exemplary damages under applicable law;

C.      A determination that Defendant is financially responsible for all Class notices and the administration of class relief;

D.      An award of any applicable statutory or civil penalties;

E.      An order requiring Defendant to pay both pre-judgment and post-judgment interest on any amounts awarded;

F.      An  award  of  reasonable  counsel  fees, plus reimbursement of reasonable costs, expenses, and disbursements, including reasonable allowances for the fees of  experts

G.      Leave to amend this Complaint to conform to the evidence produced in discovery and at trial; and

H.      Any such other and further relief the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.

Dated: January 18, 2018

**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.**

s/ James E. Cecchi
JAMES E. CECCHI

CAROLINE F. BARTLETT
DONALD A. ECKLUND
MICHAEL A. INNES
5 Becker Farm Road
Roseland, New Jersey 07068
Tel: (973) 994-1700

**SEEGER WEISS LLP**
CHRISTOPHER A. SEEGER
DAVID R. BUCHANAN
CRISTOPHER L. AYERS
55 Challenger Road, 6th Fl.
Ridgefield Park, New Jersey 07660
Tel: (973) 639-9100